**In re Fred J. MARINKO, Debtor.**

**FORD MOTOR CREDIT COMPANY, Plaintiff,**

v.

**Fred J. MARINKO, Defendant.**

**Bankruptcy No. B92–12451. Adv. No. B92–1425.**

United States Bankruptcy Court, N.D. Ohio, E.D.

Dec. 8, 1992.

Mary C. Kaczmarek, Thompson, Hine and Flory, Cleveland, Ohio, for Ford Motor Credit Co.

Glenn Forbes, Painesville, Ohio, for defendant.

## MEMORANDUM OF OPINION AND ORDER

RANDOLPH BAXTER, Bankruptcy Judge.

Ford Motor Credit Company (FMCC), a secured creditor, seeks to have a debt guaranteed by Fred J. Marinko (the Debtor) determined to be nondischargeable under § 523 of the Bankruptcy Code [11 U.S.C. § 523] in the above-styled adversary proceeding. In furtherance of that effort, FMCC filed its motion for summary judgment. Upon a hearing on the motion and a review of the record, generally, the following findings and conclusions are made:

The Debtor, Fred J. Marinko, is the former president and shareholder of an entity known as Western Reserve Tractor Sales, Inc. (WRTS). While in that capacity, WRTS was engaged in a long term lending relationship with FMCC. Specifically, FMCC extended floor-plan financing to WRTS, which was engaged in a tractor and equipment sales business. The floor-plan financing was extended pursuant to terms of several financing agreements (the Agreements). The purpose of these financing agreements was to allow WRTS an ability to purchase new and used tractors, equipment and other merchandise from an entity known as Ford New Holland. FMCC's security interests in these matters were duly perfected.

The Debtor served as WRTS' vice president from July 8, 1977 until February, 1990. From February, 1990 to November, 1992, he served as Company president.

(Depo., Marinko p. 14, L. 35–36). Additionally, he owned 30% of WRTS' shares (*Id.*, p. 9.) and was responsible for the day-to-day operations of WRTS. *Id.*, p. 36. Attendant to the aforementioned Agreements, the Debtor executed and delivered to FMCC a continuing guaranty, wherein he personally undertook to guarantee the repayment by WRTS of any and all amounts due and owing from WRTS to FMCC. (Marinko Depo., p. 46).

During the course of this financial relationship between FMCC and WRTS, FMCC conducted periodic audits of WRTS' floorplan merchandise to insure compliance with terms under the Agreements. Regular audits were conducted by FMCC during the years 1990 and 1991. During these audit inspections, FMCC verified whether floorplan merchandise had been sold, rented, or leased and whether applicable payments had been forwarded to FMCC by WRTS pursuant to the Agreements. Following an audit conducted by FMCC in September, 1991, it was discovered that WRTS had sold several items of floor-plan merchandise but failed to make the required payments to FMCC under the agreements. More specifically, the Complaint alleges that WRTS sold some 85 items of floor-plan merchandise with an approximate value of $945,163.70 without forwarding the required payments to FMCC (i.e., items were sold out of trust). Considering WRTS' conduct to have constituted a default and breach of the Agreements, FMCC terminated WRTS' dealership status, sold the remaining floor-plan merchandise items at auction where it sustained a deficiency of $70,749.90. The total amount due FMCC on the Agreements is reported to be $1,188,764.93, plus accrued interest. The Debtor is alleged to be one of five (5) guarantors on the aforesaid debt. (See, Complaint, Count Two). An independent action was filed in the district court against the Debtor and the other guarantors, which resulted in a default judgment being rendered against the Debtor in those proceedings. Soon thereafter, the Debtor sought relief in this Court by filing his voluntary petition for relief under Chapter 7. This adversary proceeding ensued.

The dispositive issues are two-fold: (1) whether the Debtor's conduct respecting the subject audit findings is sufficient to warrant the subject debt being rendered nondischargeable; (2) whether there exists genuine issues of material fact to warrant a grant of summary judgment under Rule 56, Fed.R.Civ.P.

█ Under Rule 7056, Bankr.R., summary judgment shall be granted forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. See, Rule 7056(c), Bankr.R.

Rule 7056(e), Bankr.R. provides in pertinent part:

> When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If the adverse party does not so respond, summary judgment, if appropriate, shall be entered against the adverse party.

Rule 7056(e), Bankr.R.

Under § 523(a)(2)(A), a debt is not dischargeable where it is:

523(a)

(2) for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by

    (A) false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition....

    11 U.S.C. 523(a)(2)(A).

(4) for fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny.

    11 U.S.C. 523(a)(4).

(6) for willful and malicious injury by the debtor to another entity or to the property of another entity.

    11 U.S.C. 523(a)(6).

In the action at bar, the Plaintiff FMCC alleges that the subject debt is nondischargeable pursuant to § 523(a)(2)(A), (a)(4) and (a)(6) of the Bankruptcy Code. In an action brought against the Debtor and other co-defendants in the district court, a default judgment was entered against the Debtor.[1] According to the Debtor's deposition testimony, he was not only the president and major shareholder of WRTS at the time the 1990 and 1991 audits were taken by FMCC, his duties included being responsible for the day-to-day operations of the WRTS. He was familiar with the terms of the subject floor-plan financing agreements and understood that WRTS was to remit certain funds to FMCC based upon floor-plan merchandise sold. (Marinko Depo., pp. 31–32). Beyond that concession, the Debtor, upon advice of counsel, asserted his Fifth Amendment privilege in response to certain other inquiries relative to his personal knowledge about the audit findings.

Relative to the nondischargeability elements under § 523, FMCC alleges that the Debtor represented that certain floor-plan merchandise was unsold when, in fact, the same had been sold by WRTS for many months or years earlier with no payment having been made by WRTS to FMCC as required under the Agreements. In other respects, FMCC alleges that the dealership played a "shell game" regarding the location of certain merchandise when FMCC inspections were held. The Debtor testified that he had sold certain items of merchandise without making the required payments to FMCC. (Depo., pp. 63–70). Audit checks by FMCC showed where WRTS had represented to FMCC auditors that the same merchandise was unsold. When asked if he had concealed the fact that WRTS had insufficient funds to make the Agreement payments to FMCC, the Debtor asserted his Fifth Amendment privilege but did respond in the affirmative to an inquiry which posited that "... he knew as early as 1989 that [he] lacked enough funds to properly pay off Ford Credit's lien ...".

Although the Debtor asserted his Fifth Amendment privilege to all questions which attempted to elicit concealment conduct on his part, affidavits submitted by FMCC in support of its summary judgment motion reveal that the Debtor misrepresented the status of floor-plan merchandise as being unsold when, in fact, it had been sold; would fraudulently have customers temporarily return sold merchandise to the dealership to effectuate a fraud upon FMCC. (See, Affidavits: Bailey, Langford and Millar.) Further alleged fraudulent and deceitful conduct on the part of the Debtor included altering the appearance of merchandise, including the switching of serial numbers on items of floor-plan merchandise prior to FMCC audit inspections. (Id.). Other misrepresentations included passing-off one unit as several units to thwart the inspection efforts of FMCC (Id.). Remarkably, two of the Plaintiff's affiants, Langford and Millar, are former employees of WRTS. (WRTS is no longer an operating entity.).

Relevant deposition testimony of Marinko points to his first-hand knowledge that he knowingly misrepresented financial data to FMCC:

*Question:* Let's go through the list of equipment that you or someone at your direction put together for Ford Credit .... First.... one is a tractor, right, and you told Ford Credit in September or early October that it was sold to Lease Line Limited, correct?

*Answer:* Yes.

*Question:* Did you ever remit to Ford Credit its portion of the price? Did you ever pay Ford Credit?

*Answer:* No.

*Question:* Why not?

*Answer:* Didn't have the money.

(Deposition of Fred J. Marinko, October 23, 1991, pp. 63–64).

The above deposition testimony not only fulfills the elements of § 523(a)(2)(A) but also satisfies the requirements of

---

1. *Ford Motor Credit Company v. Western Reserve Tractor Sales, Inc., et al.,* Case No. 91–CV– 2095 (N.D.Ohio 1991).

§ 523(a)(4) to bar a discharge of FMCC's debt scheduled by the Debtor in an amount of $900,000.00. (See, Petition Schedule F). Further, the above extracted deposition testimony is typical of similar responses given by the Debtor to deposition questions which attempted to elicit whether WRTS sold certain equipment it represented to FMCC as being unsold and further shows a misdirecting of those sale proceeds when the Debtor, as company president, knew that those proceeds were to be remitted to FMCC. (See, Depo. Testimony, Fred J. Marinko, pp. 63–73). In brief, the Debtor's own testimony shows that he misrepresented financial data to FMCC and knew it was false.

The nondischargeability elements of § 523(a)(2)(A) are further demonstrated in the Affidavit of Lynn F. Bailey, a branch manager of FMCC. His Affidavit was not controverted by counter-affidavits and were based upon his personal review of FMCC's wholesale inventory audits of WRTS, his preparation of those documents, and his participation in the audit process made upon WRTS. Therein, his Affidavit sets forth a description of the Debtor's conduct which this Court finds to be fraudulent. More specifically, the audit findings made by Bailey correspond directly to the misrepresentations admitted by the Debtor in his deposition testimony. (See, Bailey Affidavit, pp. 6–13).

Ronald Langford, a former serviceman employee of WRTS, also submitted an Affidavit in support of FMCC's summary judgment motion. This Affidavit was not controverted by counter-affidavits or other persuasive pleadings. Therein, he expressed personal familiarity of the floor plan financing arrangement between FMCC and WRTS and stated that he understood the sale proceeds were to be held in trust by WRTS for remittance to FMCC. From 1989 until the termination of his employ with WRTC in September, 1991, he personally noticed that prior and during audit visits by FMCC of WRTS the Debtor and other employees directed by the Debtor would relocate certain items of equipment in such a manner to cause the FMCC auditors to miscount said equipment.

(Langford, Affidavit, pp. 3–6). The Affidavit of Richard Millar, a former service manager of WRTS, also was presented in support of FMCC's summary judgment motion and, similarly, was not controverted by counter-affidavits or otherwise. His Affidavit provides a description of the Debtor's fraudulent conduct based upon his personal knowledge (See, Millar Affidavit, pp. 2–6). Specifically, he described how the Debtor had customers to return sold merchandise to the dealership in order to misrepresent sales data to FMCC auditors.

The totality of the Debtor's own deposition testimony and uncontroverted affidavits tendered in support of FMCC's summary judgment motion clearly demonstrates the absence of a genuine issue of material fact in dispute and judgment should be granted as a matter of law. With regard to the dischargeability requirements of § 523(a)(2)(A), I find that the false representations were, indeed, made or were caused to be made by the Debtor to FMCC respecting the debtor's or an insider's financial condition. Also, I find that the elements of § 523(a)(2)(B) were sufficiently demonstrated through the aforementioned documents to deny discharge of the subject debt. The misrepresentations made by the Debtor, or at his behest, were made in written form to FMCC. Such were materially false and respected the financial condition of WRTS. Further, in regard to such misrepresentations by the Debtor, or his operatives, FMCC reasonably relied. The misrepresentations made by the Debtor were made with an intent to deceive FMCC.

Further, under § 523(a)(4), the totality of the above findings support a denial of debt discharge under § 523(a)(4). The Debtor, as WRTS's vice president, and later president during the relevant time period, was familiar with the terms and conditions of the financing Agreements and further knew that proceeds of sale were to be held in trust until properly remitted to FMCC. In this regard, the Debtor, as principal officer for WRTS, served in a fiduciary capacity. His failure to properly remit

sales proceeds was both fraudulent and also constituted embezzlement of FMCC's proceeds. On this basis, also, the subject debt is nondischargeable.

■ Lastly, in view of the foregoing findings, the Debtor's conduct towards the Plaintiff's merchandise was both willful and malicious. Based upon his position of company president, his familiarity with the terms and conditions of the Agreements, and his responsibility for running the day-to-day business affairs of WRTS, the Debtor knew that sale proceeds from floor-plan merchandise was property of FMCC. Yet, he deliberately chose to misappropriate that property to other unauthorized uses. This conduct was willful, as it was both deliberate and intentional. (See, Legislative History to § 523(a)(6)), H.R.Rep. No. 595, 95th Cong., 1st Sess. 365 (1977), U.S.C.C.A.N. 1978, 5787, 5963, 6320–6321, which legislatively overruled the "reckless disregard" standard enunciated in *Tinker v. Colwell*, 193 U.S. 473, 24 S.Ct. 505, 48 L.Ed. 754 (1904).

Furthermore, the phrase "willful and malicious injury" in § 523(a)(6) applies to circumstances where there was willful and malicious conversion, as occurred in the present matter. (See, 124 Cong.Rec.H. 11096 (daily ed. Sept. 28, 1978); S.17412 (daily ed. Oct. 6, 1978); remarks of Rep. Edwards and Sen. DeConcini.). The deliberate and intentional misdirecting of the sale proceeds constituted a wrongful conversion of FMCC's property. Such conversion was done maliciously. Again, for those several reasons, the Debtor's indebtedness to FMCC is nondischargeable.

■ On March 6, 1992, the district court, (Matia, J.) entered a default judgment against WRTS in an amount of $1,238,866.17, plus accrued interest from January 31, 1992. In the present case, FMCC seeks a nondischargeability ruling on the basis of an execution on the Debtor's guaranty and his fraudulent conduct as an officer of WRTS. The docket is silent to reflect where the Debtor has engaged in any discovery in this proceeding. His response to the Plaintiff's Complaint and motion for summary judgment is tantamount to a general denial. The FMCC clearly has presented a *prima facie* case through its pleadings and supporting documentation. Other than an attack on the adequacy of FMCC's pleadings, the Debtor failed to correspond with supporting affidavits or other documents or pleadings to controvert the allegations. Such failure violates the requirement of Rule 7056(e) which precludes an adverse party from resting upon mere allegations or denials. In this regard, the Debtor's motion to strike affidavits is hereby denied. Under § 523(a) provisions, the nondischargeability burden of proof must be carried by a preponderance of the evidence standard. *In re Grogan*, 498 U.S. 279, 111 S.Ct. 654, 112 L.Ed.2d 755 (1991). That burden is upon the party objecting to the discharge. Further, as indicated above, a grant of summary judgment is proper where there remains no genuine issues of material fact in dispute and judgment should be granted as a matter of law. FMCC's burden of proof was satisfied. Further, as the party opposing a summary judgment motion under Rule 7056(e), the Debtor was obligated to set forth specific facts showing an absence of a genuine issue for trial. The Debtor has failed in this regard to do so. *See, Hardin v. Straub*, 954 F.2d 1193 (6th Cir. 1992), citing, *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986). Instead, the Debtor chose to attack the adequacy of the FMCC's summary judgment motion. *See also, Cloverdale Equipment Co. v. Simon Aerials, Inc.*, 869 F.2d 934, 937 (6th Cir. 1989).

In view of the supporting affidavits and the Debtor's own deposition testimony, the aforementioned prerequisites of § 523 have been sufficiently demonstrated to preclude debt discharge, and summary judgment is hereby granted.

IT IS SO ORDERED.