*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206

ELECTRONIC CITATION: 2001 FED App. 0163P (6th Cir.)
File Name: 01a0163p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

———————————

IVAN VARLJEN; MILENA
VARLJEN; EUCLID WELDING
CO., INC.; UNITED STATES, *ex
rel.*,

  *Plaintiffs-Appellants,*

    *v.*

CLEVELAND GEAR CO., INC.;
DANA C. LYNCH; VESPER
CORPORATION; JAMES
KRAVA,

  *Defendants-Appellees.*

No. 99-4312

Appeal from the United States District Court
for the Northern District of Ohio at Cleveland.
No. 96-01651—Paul R. Matia, Chief District Judge.

Argued: November 28, 2000

Decided and Filed: May 17, 2001

Before: NELSON, SILER, and CLAY, Circuit Judges.

———————

**COUNSEL**

**ARGUED:** Angeline R. Brozovich, Shaker Heights, Ohio, for Appellants.   David J. Tocco, VORYS, SATER, SEYMOUR & PEASE, Cleveland, Ohio, for Appellees. **ON BRIEF:** Angeline R. Brozovich, Shaker Heights, Ohio, for Appellants.   David J. Tocco, John Winship Read, VORYS, SATER, SEYMOUR & PEASE, Cleveland, Ohio, for Appellees.  Irene M. Solet, Douglas N. Letter, UNITED STATES DEPARTMENT OF JUSTICE, CIVIL DIVISION, APPELLATE STAFF, Washington, D.C., for Amicus Curiae.

———————

**OPINION**

———————

SILER, Circuit Judge.  Plaintiffs, Euclid Welding Co., Inc., and its owners, Ivan and Milena Varljen ("Relators"), appeal the Federal Rule of Civil Procedure 12(b)(6) dismissal of this *qui tam* action for recovery under 31 U.S.C. §§ 3729(a)(1) and (a)(2) of the False Claims Act ("FCA").  The district court granted the motion to dismiss filed by the defendants, Cleveland Gear Co., Inc., Dana C. Lynch, Vesper Corporation and James Krava (hereinafter "Cleveland Gear"), because the Relators had not alleged that the United States had suffered an injury in its dealings with Cleveland Gear. For reasons stated hereafter, we REVERSE.

## BACKGROUND

Relators had a contract with the United States Department of Defense to build 400 winches.  They subcontracted with Cleveland Gear to produce worm gears for inclusion in the winches.   The subcontract required that Cleveland Gear submit the first batch of ten gears to Relators for inspection and approval of one gear in the batch.   Upon approval, subsequent batches were to be produced by the same

manufacturing process.  Pursuant to the "Quality Assurance Requirement" for this contract, Relators had to be notified of changes in the manufacturing process that would "affect fit, function, or service life of the item" and samples of gears so produced had to be approved by the Relators.  Government inspection and approval of all gears were required before they left Cleveland Gear's plant.

In 1992, Cleveland Gear produced an initial batch of ten gears and shipped them to Relators.  After further manufacturing, Relators submitted one item from this batch to the government for approval, which was obtained.  Thereafter, Cleveland Gear produced additional batches and presented each group for government inspections prior to shipment to Relators.  The government accepted some of these items and rejected others.  Approved items were shipped to Relators, incorporated into the winches and shipped to the government.  The government was billed and paid for winches containing the approved gears.

Relators filed this *qui tam*[1] action, alleging violations of the FCA and pendent state common law claims of fraud and breach of contract.  With regard to the FCA claims, Relators alleged that Cleveland Gear had changed the worm gear manufacturing process without notice after the approval of the initial batch of gears.  They alleged that this change violated the contract specifications and was an attempt to produce gears more cheaply that would nonetheless pass government inspection.  The Relators' amended complaint, which the district court denied leave to file, alleged that winches containing the gears produced under the different process

---

[1] Under the FCA, the Attorney General may bring a civil action if she finds that a violation has been committed.  31 U.S.C. 3730(a). Alternatively, a private party ("relator") may bring a *qui tam* action on behalf of the United States.  31 U.S.C. § 3730(b)(1).  The Attorney General has the option of assuming control of the *qui tam* action or declining to intervene.  The relator receives a share of any award in this type of action and the government receives the balance.

"could, if they have not already, pose serious injury to persons connected with the Department of Defense." The amended complaint also alleged that the government would have rejected the gears produced by the changed manufacturing process if the different process had been known at the time of inspection.

The government declined to intervene in the case. The district court granted Cleveland Gear's motion to dismiss for failure to state a claim, denied leave to file an amended complaint as futile, held that the Relators' motion for summary judgment was mooted by the dismissal and concluded that it lacked subject matter jurisdiction over the state common law claims. The government filed a brief as *amicus curiae* in support of the Relators and of reversal.

## STANDARD OF REVIEW

This court reviews *de novo* a district court's dismissal for failure to state a claim upon which relief can be granted. *See Glassner v. R.J. Reynolds Tobacco Co.*, 223 F.3d 343, 346 (6th Cir. 2000) (citing *Sistrunk v. City of Strongsville*, 99 F.3d 194, 197 (6th Cir.1996)). "To survive a motion to dismiss under Fed. R. Civ. P. 12(b)(6), a 'complaint must contain either direct or inferential allegations respecting all the material elements to sustain a recovery under some viable legal theory.'" *Id.* (quoting *Scheid v. Fanny Farmer Candy Shops, Inc.*, 859 F.2d 434, 436 (6th Cir.1988)).

For purposes of this review, the court must consider as true the well-pleaded allegations of the complaint and construe them in the light most favorable to the plaintiff. However, this court "need not accept as true legal conclusions or unwarranted factual inferences." *Gregory v. Shelby County, Tennessee*, 220 F.3d 433, 446 (6th Cir. 2000) (citing *Mixon v. State of Ohio*, 193 F.3d 389, 400 (6th Cir.1999)). "In order for a dismissal to be proper, it must appear beyond doubt that the plaintiff would not be able to recover under any set of

The amended complaint also alleged that had the government known of the manufacturing change, it would have rejected all of the gears produced after the initial batch. Thus, while this court does not believe that it was necessary, by pleading that the false claim would result in a specific injury to the government, the amended complaint cured the "deficiency" that the district court pointed out. Either complaint should have withstood the motion to dismiss.

For the foregoing reasons, the judgment of the district court is REVERSED, and this case is REMANDED for further proceedings consistent with this opinion.

where final inspection is the obligation of the government, such obligation does not absolve a contractor on liability for fraud.").

The Relators' complaint alleged that Cleveland Gear did not comply with the "Quality Assurance Requirements," the purpose of which was "to assure the existence of 'critical safety characteristics.'" The contract provision dictated manufacturing processes consistent with the first article products submitted by Cleveland Gear in order to preclude "an unsafe condition including loss or serious damage to the end item or major components, loss of control, or serious injury to personnel." The allegation that Cleveland Gear did not comply with this provision amounts to an allegation that, through fraud, it knowingly produced products that did not meet the contract's quality and corresponding safety requirements. It is undisputed that Cleveland Gear caused to be submitted a "claim" to the government. It is immaterial whether the alleged contractual noncompliance resulted in products with the "same basic performance characteristics" as those that would have been produced in compliance with the terms of the contract. *See Aerodex*, 469 F.2d at 1007.

In light of the fact that it is not essential for an FCA plaintiff to allege damages, and because of the irrelevance of government inspection and the relative quality of conforming and nonconforming products in an FCA case, the Relators' complaint should have survived a motion under Rule 12(b)(6), as it clearly alleges an FCA "injury." The district court appears to have concluded that an FCA plaintiff must allege the quantifiable effect or detriment that the submission of a false claim had on the government. This would render the relative language of the FCA and the *Aerodex*, *Schwedt* and *Midwest Specialities* decisions meaningless.

Furthermore, the Relators' amended complaint explicitly linked the contractual noncompliance to a risk of "serious injury to persons connected with the Department of Defense" who used the winches in which the gears were incorporated.

facts that could be presented consistent with the allegations of the complaint." *Glassner*, 223 F.3d at 346.

## DISCUSSION

The Relators sued under FCA provisions that provide for treble damages and civil penalties up to $10,000 for each violation when someone:

(1) knowingly presents, or causes to be presented, to an officer or employee of the United States Government or a member of the Armed Forces of the United States a false or fraudulent claim for payment or approval; [or] (2) knowingly makes, uses, or causes to be made or used, a false record or statement to get a false or fraudulent claim paid or approved by the Government.

31 U.S.C. § 3729(a)(1) and (a)(2).

The broad language of these provisions provides the somewhat unique contours of a sustainable *qui tam* action under the FCA. Consistent with these provisions, recovery under the FCA is not dependent upon the government's sustaining monetary damages. *See* S. Rep. No. 99-345, at 8 (1986); *Schwedt v. Planning Research Corp.*, 59 F.3d 196, 199 (D.C. Cir. 1995). Likewise, the failure to comply with government contract specifications can result in an FCA "injury" to the government, even if the supplied product is as good as the specified product. *See United States ex rel. Compton v. Midwest Specialities, Inc.*, 142 F.3d 296, 304 (6th Cir. 1998). The government's inspection and acceptance of a product do not absolve a contractor from liability for fraud under the FCA. *See United States v. Aerodex, Inc.*, 469 F.2d 1003, 1009 (5th Cir. 1972) (affirming FCA liability because products did not conform to contract specifications, even though the supplied product had the same basic performance characteristics). Finally, even the government's knowledge of a fraud does not necessarily absolve a contractor from liability under the FCA. *See United States ex rel. Hagood v. Sonoma County Water Agency*, 929 F.2d 1416, 1421 (9th Cir.

1991). The parties to this action agree upon these points of law.

"Parties that contract with the government are held to the letter of the contract — irrespective of whether the contract terms appear onerous from an *ex post* perspective, *or whether the contract's purpose could be effectuated in some other way* — under the maxim that '[m]en must turn square corners when they deal with the Government.'" *Midwest Specialities, Inc.*, 142 F.3d at 302 (emphasis added).

The Relators and the government argue that the district court erred by granting Cleveland Gear's motion to dismiss because it incorrectly: (1) held that the Relators had not alleged that the government had been injured by Cleveland Gear's conduct and that the complaint was therefore legally insufficient under the FCA; (2) held that the government had not been injured because the inspection and acceptance of the gears precluded Relators from showing that the gears were defective; and (3) disregarded Relators' allegation that gears produced by the manufacturing method different from that used to produce the first batch were of inferior quality.

Cleveland Gear argues that dismissal was proper because (1) the Relators did not allege a violation of subcontract specifications; and (2) changes to manufacturing processes that are not spelled out in the contract or specifications do not equate to a false claim that injured the government. Specifically, it argues that the contract only specified a "hardness target which [sic] Cleveland Gear had to meet in heat treating the worm gears," and that no portion of the contract or quality assurance requirements specified the process by which heat treating had to occur. It argues that dismissal was proper because Relators failed to allege that the delivered gears were not heat treated to the specified hardness or that it failed to follow the contract's inspection protocol.

Cleveland Gear contends that an injury in fact must be alleged in an FCA *qui tam* action under *Kreindler &*

*Kreindler v. United Technologies Corp.*, 985 F.2d 1148 (2d Cir. 1993). In *Kreindler*, the court held that "Congress cannot waive the constitutional [Article III, Section 2] minimum of injury-in-fact. In a[n] [FCA] *qui tam* action, the plaintiff sues on behalf of and in the name of the government and invokes the standing of the government resulting from the fraud injury." *Id*. at 1154. The district court applied this principle in making its decision to dismiss this action by holding that the Relators had failed to allege any injury to the United States, relying on the fact that the government had inspected and approved the complained-of gears.

The government points out that the impact of the manufacturing change, i.e., whether it affected "fit, function, or service life of the item" and necessitated notification of the change under the contract specifications, is an issue of fact that should not be resolved by the district court at the motion to dismiss stage. It also notes that the Relators' amended complaint stated that the alleged noncompliant gears would result in a risk of damage to the winches, their operation, and to the personnel using them. Thus, Cleveland Gear's certification that it had complied with the "Quality Assurance Requirements," including inspection, was false.

Cleveland Gear admits that Relators' allegation that the manufacturing process was changed must be taken as true, but it contends that the allegation that this change resulted in inferior gears is a legal conclusion that does not deserve the same deference. It characterizes the allegation that the change resulted in inferior quality gears and a false claim as an "inferential leap," which at best amounts to a dispute over the reasonable interpretation of the contract.

The district court erred in concluding that no injury occurred inasmuch as it relied upon the fact that the government had inspected and accepted the items in question. Our conclusion is consistent with the points of law outlined above, and, thus, the district court's discussion of the issue was flawed. *See Aerodex, Inc.*, 469 F.2d at 1009 ("even