**In re Robert Edward WALLS, Debtor.**

**Judith Rowland, Richard Rowland, Plaintiffs**

v.

**Robert Edward Walls, Defendant.**

**Bankruptcy No. 07–30251.**

**Adversary No. 07–3110.**

United States Bankruptcy Court,
S.D. Ohio,
Western Division,
at Dayton.

Sept. 12, 2007.

Daniel A. Brown, Esq., Dayton, OH, for the Plaintiff.

Patricia L. Hill, Esq., Dayton, OH, for the Plaintiff.

Robert Edward Walls, West Milton, OH, Debtor–Defendant.

Roger E. Luring, Esq., Troy, OH, for the Debtor–Defendant.

## DECISION 1) GRANTING DEFENDANT'S MOTION TO DISMISS PLAINTIFFS' § 523(a)(4) CAUSE OF ACTION AND 2) GRANTING PLAINTIFFS' MOTION FOR LEAVE TO AMEND THE COMPLAINT TO PLEAD A § 523(a)(2) CAUSE OF ACTION

THOMAS F. WALDRON, Bankruptcy Judge.

### Procedural Background

On May 7, 2007, Judith and Richard Rowland (the "Plaintiffs") filed a complaint against the Debtor, Robert Edward Walls (Doc. 1) (the "Defendant"). The complaint alleged that a debt arising from the purchase of real property, including certain related state law environmental issues, should be found non-dischargeable pursuant to 11 U.S.C. § 523(a)(4). On June 14, 2007, the Defendant filed a *Motion to Dismiss* (Doc. 10), asserting the Plaintiffs' complaint failed to state a claim upon which relief could be granted. See Federal Rule of Civil Procedure 12(b)(6), applicable by Bankruptcy Rule 7012. The Plaintiffs filed a response to the motion on July 5, 2007 (Doc. 13).

On July 3, 2007, the Plaintiffs moved for leave to amend their complaint in order to include a cause of action under 11 U.S.C. § 523(a)(2) (Doc. 12). The Defendant filed a response in opposition on July 13, 2007 (Doc. 15), arguing the time to file such a cause of action had expired under Bankruptcy Rule 4007(c), the proposed amended complaint sought to pursue separate legal theories involving new facts, and, therefore, did not relate back to the filing date of the original complaint. See Federal Rule of Civil Procedure 15(c), applicable by Bankruptcy Rule 7015. The Plaintiffs filed a reply brief on July 31, 2007 (Doc. 16).[1]

### Jurisdiction

This court has jurisdiction pursuant to 28 U.S.C. § 1334 and the Standing Order of Reference entered in this District. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(I).

### Facts[2]

### Plaintiffs' Original Complaint

The real property at issue is located in Montgomery County, at 60 South State Street, Phillipsburg, Ohio (Doc. 1, ¶ 7) (the "property"), and has been contaminated by

---

1. In the interests of considering all the views of both parties, the court reviewed the Plaintiffs' reply brief, although it was filed out of time. See LBR 9013–1(c) (Reply memorandum shall be filed not later than seven days after the date of the certificate of service of the response memorandum).

2. The facts section includes the allegations of the complaint (Doc. 1) and the proposed amended complaint (Doc. 12—Exh. A), which, for purposes of the pending motions only, the court assumes are true.

petroleum products from underground storage tanks (the "storage tanks") that were previously located on the property (Doc. 1, ¶ 8). The Defendant purchased the property from a non-party, Don Beam, on or about April 5, 1994 (Doc. 1, ¶ 9). At that time, the storage tanks, which contained petroleum products, were still located on the property (Doc. 1, ¶ 10).

In April 1997, the Defendant arranged to remove the storage tanks, but due to holes in the storage tanks, petroleum products had leaked on the property (Doc. 1, ¶ 11). This release was reported to the Ohio Department of Commerce, Bureau of Underground Storage Tank Regulations ("BUSTR") on or about May 6, 1997 (Doc. 1, ¶ 12). The Defendant had personal knowledge of the leak and was aware the leak was reported to BUSTR (Doc. 1, ¶ 14). BUSTR views Don Beam and the Defendant as "jointly responsible" for the petroleum leak (Doc. 1, ¶ 15).

The Defendant entered a contract to sell the property to the Plaintiffs in July 2001 and the contract was amended in August 2001 (Doc. 1, ¶ 16; see Exh. A to Doc. 1— *Contract to Purchase* and *Contract to Purchase Real Estate Addendum* ). The purchase price was $110,000 (Doc. 1, ¶ 17). Prior to the closing, the Plaintiffs learned of the petroleum leak and the parties entered an Environmental Indemnity Agreement dated October 9, 2001 (Doc. 1, ¶¶ 18– 19; Exh. B. to Doc. 1).

At the closing, the Defendant received $87,389.96, by reducing the purchase price of $110,000 by $22,610.04 in settlement charges (Doc. 1, ¶ 20; see Exh. C to Doc.

1). The settlement charges included an $11,000 escrow account, which provided that the holder of the escrow funds, the Chicago Title Company, would release the funds upon the following condition: "CLEAR EPA CERTIFICATE—money will be disbursed to contractor upon receipt of invoice for work completed." (Doc. 1, ¶ 21; Exh. D to Doc. 1). The funds were "to cover the anticipated cost of having the monitoring wells sampled[.]" (Doc. 1, ¶ 35). The Plaintiffs assert that the Environmental Indemnity Agreement required the Defendant to hold the entire $87,389.96 in trust to investigate and remediate environmental issues on the property, associated with the petroleum leak (Doc. 1, ¶¶ 22–28; 31–41).

Due to the failure of the Defendant to resolve the environmental issues, the Plaintiffs allege they have suffered damages in the form of a diminution in the value of the property and may be required, by BUSTR, to investigate and remediate the property. The Plaintiffs also allege that a separate agreement the Defendant reached with Don Beam constitutes fiduciary fraud with the meaning of § 523(a)(4) (Doc. 1, ¶¶ 29, 30 and 37) since the agreement was reached without the Plaintiffs' consent and was a breach of the fiduciary duty the Defendant owed the Plaintiffs.

### Plaintiffs' Proposed Amended Complaint

The Plaintiffs' proposed amended complaint (Doc. 12—Exh. A) includes a new count under § 523(a)(2) [3] and is grounded in fraudulent misrepresentation and con-

---

**3.** The proposed amended complaint (Doc. 12—Exh. A), although only referencing § 523(a)(2), is clearly based on § 523(a)(2)(A), and not § 523(a)(2)(B). Section § 523(a)(2)(A) states that "[a] discharge under section 727 ... of this title does not discharge an individual debtor from any debt ... for

money, property, services, or an extension, renewal, or refinancing of credit, to the extend obtained, by ... false pretenses, a false misrepresentation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition[.]".

cealment (¶ 67) [4]. Beyond the facts incorporated from the original complaint, the proposed amended complaint references a "financing contingency" that allowed the Plaintiffs to terminate the contract if their lender, National City Bank, did not receive a "No Further Action Letter" (the "NFA letter") concerning the property from BUSTR (¶ 55). The proposed amended complaint also alleges the Defendant had possession of a report of TCA Environmental, Inc. ("TCA") showing groundwater contamination that exceed the BUSTR standard and, therefore, knew that no NFA letter would be issued by BUSTR (¶¶ 20–23, 57). The Plaintiffs further allege that they relied on false representations from the Defendant that the NFA letter would be issued and any remediation would be covered by the $11,000 escrow fund (¶¶ 58–60). The remainder of the allegations concern fraudulent misrepresentation and concealment in allowing the Plaintiffs to believe that the property was eligible for funds to assist in remediation from the Petroleum Underground Storage Tank Compensation Board (¶¶ 17, 18, 63, 64) and further deception and failure to disclose a contamination report prepared by E3, Inc. (¶¶ 13, 14, 62), the aforementioned environmental assessment by TCA (¶¶ 20–23, 62) and an October 1, 2007 letter from BUSTR which required a remediation of the property (¶ 61).

### Issues Presented

1) Is the Plaintiffs' cause of action, pursuant to 11 U.S.C. § 523(a)(4), subject to dismissal for failure to state a claim upon which relief can be granted?

2) Are the Plaintiffs entitled to amend their complaint to add a 11 U.S.C. § 523(a)(2) cause of action pursuant to the relation back provisions of Federal Rule of Civil Procedure 15(c), after the time has expired to file such a cause of action under Federal Rule of Bankruptcy Procedure 4007(c)?

### Issues Decided

1) The Plaintiffs' cause of action, pursuant to 11 U.S.C. § 523(a)(4), is subject to dismissal for failure to state a claim upon which relief can be granted.

2) The Plaintiffs are entitled to amend their complaint to add a 11 U.S.C. § 523(a)(2) cause of action pursuant to the relation back provisions of Federal Rule of Civil Procedure 15(c), after the time has expired to file such a cause of action under Federal Rule of Bankruptcy Procedure 4007(c).

### Analysis

#### Standard for Motion to Dismiss

Federal Rule of Civil Procedure 12(b)(6), applicable to adversary proceedings by Bankruptcy Rule 7012, states that a defendant may move to dismiss a complaint for "failure to state a claim upon which relief can be granted." The Sixth Circuit has stated that "[d]ismissal of a complaint for the failure to state a claim on which relief may be granted is appropriate only if it appears beyond a doubt that the plaintiff can prove no set of facts in support of his claim that would entitle him to relief." *Thomas v. Eby*, 481 F.3d 434, 437 (6th Cir.2007) (citation omitted). To survive a defendant's motion, the plaintiff's complaint "must contain either direct or inferential allegations respecting all the material elements to sustain a recovery under some viable legal theory." *Varljen v. Cleveland Gear Co., Inc.*, 250 F.3d 426, 429 (6th Cir.2001) (citations and internal quotation marks omitted).

In considering a motion to dismiss, the court "must consider as true the well-pleaded allegations of the complaint and

---

4. All the paragraph references in this section are to Exhibit A of Document 12.

construe them in the light most favorable to the plaintiff." *Id.* However, the court "need not accept as true legal conclusions or unwarranted factual inferences" in the complaint. *Id.* (citations omitted). The Supreme Court has recently reminded the federal courts that while a plaintiff need not provide detailed factual allegations to survive a motion to dismiss pursuant to Rule 12(b)(6), "a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic Corp. v. Twombly,* —— U.S. ——, 127 S.Ct. 1955, 1964–65, 167 L.Ed.2d 929 (2007) (citations omitted).

**The Plaintiffs' cause of action, pursuant to 11 U.S.C. § 523(a)(4), is subject to dismissal for failure to state a claim upon which relief can be granted.**

In their original complaint (Doc. 1), the Plaintiffs' claim is premised upon the provisions of 11 U.S.C. § 523(a)(4), which states that "[a] discharge under section 727 ... does not discharge an individual debtor from any debt ... for fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny." The Plaintiffs' complaint does not allege embezzlement or larceny, but instead "fraud or defalcation while acting in a fiduciary capacity." (Doc. 1, ¶¶ 40 and 41).

■■■ The Sixth Circuit Court of Appeals has recently reiterated the elements of a § 523(a)(4) cause of action for defalcation in a fiduciary capacity. *Bd. of Trustees of the Ohio Carpenters' Pension Fund v. Bucci (In re Bucci),* 493 F.3d 635 (6th Cir.2007). The Sixth Circuit has defined "defalcation" as "not only embezzlement and misappropriation by a fiduciary, but also the failure to account for such funds." *Id.* at 639 (citation and internal quotation marks omitted). A defalcation renders a debt non-dischargeable "when the prepon-

derance of the evidence establishes (1) a pre-existing fiduciary relationship; (2) breach of that fiduciary relationship; and (3) a resulting loss." *Id., quoting Commonwealth Land Title Co. v. Blaszak (In re Blaszak),* 397 F.3d 386 (6th Cir.2005) (internal quotation marks omitted).

■■■ The Sixth Circuit, for purposes of § 523(a)(4), has defined the term "fiduciary capacity" in a narrow manner, limiting it to situations where an express or technical trust exists. *Id.* Accord *Cash Amer. Fin. Svcs., Inc. v. Fox,* 370 B.R. 104, 114 (6th Cir.BAP2007). As the *Bucci* decision explained:

In *Carlisle Cashway, Inc. v. Johnson (In re Johnson)*[, 691 F.2d 249 (6th Cir. 1982) ] ... and *In re Interstate Agency*[, 760 F.2d 121 (6th Cir.1985) ] ... we limited the application of the defalcation provision to express or technical trusts and refused to extend it to constructive or implied trusts imposed by operation of law as a matter of equity. The decisions in those cases relied on the Supreme Court's holding in *Davis v. Aetna Acceptance Co.*[, 293 U.S. 328, 55 S.Ct. 151, 79 L.Ed. 393 (1934) ] ... that the defalcation provision applies only to express or technical trusts. Again in *In re Garver*[, 116 F.3d 176 (6th Cir.1997) ], we adopted a narrow definition of the defalcation provision and held that it does not apply to someone who merely fails to meet an obligation under a common law fiduciary relationship Accordingly, the defalcation provision applies to "only those situations involving an express or technical trust relationship arising from placement of a specific res in the hands of the debtor."

To establish the existence of an express or technical trust, a creditor must demonstrate: "(1) an intent to create a trust; (2) a trustee; (3) a trust res; and (4) a definite beneficiary." ... Though the

court in *In re Blaszak* spoke of "an intent to create a trust," it is clear in this circuit that a statute may create a trust for purposes of § 523(a)(4) if that statute defines the trust res, imposes duties on the trustee, and those duties exist prior to any act of wrongdoing. *Bucci* at 639–40 (internal citations omitted). In addition, the *Bucci* decision stated "for a trust relationship to satisfy § 523(a)(4), the fiduciary must have duties that preexist the act creating the debt." *Id.* at 643. The Sixth Circuit has applied this same standard for a "fiduciary" to not only a cause of action for defalcation under § 523(a)(4), but a claim for fraud under § 523(a)(4). *Brady v. McAllister (In re Brady)*, 101 F.3d 1165, 1173 (6th Cir.1997).

 The determination of whether an express or technical trust exists is governed by state law. *Chapman v. Pomainville (In re Pomainville)*, 254 B.R. 699, 702 (Bankr.S.D.Ohio 2000); *Riden v. Sigler (In re Sigler)*, 196 B.R. 762, 764 (Bankr. W.D.Ky.1996). For an express trust to exist under Ohio law, the Supreme Court of Ohio has held:

> there must be an explicit declaration of trust, or circumstances which show beyond reasonable doubt that a trust was intended to be created, accompanied with an intention to create a trust, followed by an actual conveyance or transfer of lawful, definite property or estate or interest, made by a person capable of making a transfer thereof, for a definite

term, vesting the legal title presently in a person capable of holding it, to hold as trustee for the benefit of a cestui que trust[5] or purpose to which the trust fund is to be applied; or a retention of title by the owner under circumstances which clearly and unequivocally disclose an intent to hold for the use of another.

*Dayton Title Agency, Inc. v. The White Family Cos. (In re Dayton Title Agency, Inc.)*, 292 B.R. 857, 869 (Bankr.S.D.Ohio 2003), *citing Ulmer v. Fulton*, 129 Ohio St. 323, 399–40, 195 N.E. 557 (1935). The essential elements of an express trust are the intention to create a trust, the property transfer, and contemporaneous with the transfer, a beneficiary designation. *Id.* (citation omitted). These elements, to form an express trust, "can be created under less formal circumstances such as when a person accepts possession of money or property for another with the express or implied understanding that he is not to hold as his own absolute property, but is to hold and apply it for specific purposes." *Id.* (citations omitted).[6]

 Assuming, *arguendo*, that a fiduciary relationship is alleged in this adversary proceeding, the Defendant argues that neither the Environmental Indemnity Agreement between the parties, nor any other agreement between the Defendant and the Plaintiffs, demonstrates an intention to create a trust for the purchase price of the property.[7] In reviewing the Environmen-

---

5. The phrase *"cestui que trust"* simply refers to a beneficiary, specifically defined as "[t]he person for whose benefit a trust is created and who is to enjoy the income or avails of it." *Black's Law Dictionary* 1048 (6th ed. abridged).

6. At least in the context of the Sixth Circuit jurisprudence concerning § 523(a)(4), the term "technical trust" does not appear to have a separate meaning from "express

trust." The case law consistently uses the terms interchangeably.

7. The Environmental Indemnity Agreement and related sale documents, which are attached to the Plaintiffs' complaint are clearly not "matters outside the pleadings" and, therefore, may be considered on a motion to dismiss. In determining a motion to dismiss, the Sixth Circuit allows documents which are not only attached to a defendant's motion to dismiss, but documents that are central to a

tal Indemnity Agreement and related sale documents, the court cannot find a single allegation which, if proven, could show an express, or even an implied, intent to require the $87,389.96 purchase price to be held in trust, require the Defendant to act as a trustee for such funds, or make the Plaintiffs the beneficiary. This is all the more evident since the parties, in a related document (Doc. 1—Exh. D), demonstrated, with clarity, the ability to create a trust by escrowing the $11,000 *res* for the benefit of a third party "contractor." The parties, as a condition of the sale contract, in a further sale addendum, or at the closing, had an opportunity to create a trust in the $87,389.96 purchase price for future remediation of the property, but did not.[8]

The Plaintiffs argue, regardless of whether the Environmental Indemnity Agreement and related sale documents used the word "trust", a clear intent to create a trust exists. While the mere use of the word "trust" may not be outcome determinative, the relevant documents do not refer to any language that would suggest a trust was intended, nor do the Plaintiffs allege any statement or action taken by the Plaintiffs outside of these agreements that would suggest the purchase price was to be held in trust, with the Plaintiffs as the beneficiary. The Plaintiffs' arguments attempt to equate fraud, which could be cognizable under § 523(a)(2), with "fraud in a fiduciary capacity" under § 523(a)(4).

The Plaintiffs' citations of authority do not support the argument of an intent to create a trust with the Plaintiffs as the beneficiary. In *Indiana Lumbermens Mut. Ins. Co., Inc. v. Constr. Alternatives, Inc. (In re Constr. Alternatives, Inc.)*, 2 F.3d 670 (6th Cir.1993), the court found there was no intent to create an express trust as to construction progress payments or to provide that the surety company was the beneficiary for such payments. In the decision, the Sixth Circuit noted that "no provision of the General Agreement of Indemnity required [the Debtor] to keep any portion of the progress payments as a separate trust fund, and the record does not indicate that [the Debtor] kept the progress payments in a separate account." *Id.* at 677. Similarly, in the adversary *sub judice*, there is nothing to suggest the fund of $87,389.96 was required to be segregated. The Plaintiffs argue that, as private individuals, unlike a surety company, they lacked the means or ability to create a separate trust. Even assuming this statement is correct, despite the existence of the "$11,000 escrow trust", such a purely equitable argument forms no basis to impose an express or technical trust. Further, while the court recognizes that the Environmental Indemnity Agreement was part of the overall consideration for the property sale, the Plaintiffs fail to explain how such contractual consideration could rise to the level of intent to create an express or technical trust. See *Bucci* at 643 ("The key point for bankruptcy pur-

---

plaintiff's complaint. *Greenberg v. Life Ins. Co. of Virginia*, 177 F.3d 507, 514 (6th Cir. 1999).

8. The court has reviewed the entire Environmental Indemnity Agreement (Doc. 1—Exh. B). The key sections on Indemnity, Remedial Work and, particularly, Procedures Relating to Indemnification, do not indicate intent to create a trust. The complaint, although stat-

ing that the "purchase price should have been held in trust by Debtor for the specific use required by the Environmental Indemnity Agreement" (Doc. 1—Exh. A, ¶ 42) does not point to any provision of the Environmental Indemnity Agreement, or an allegation outside the written sale documents, which would show an intent to create a trust for the purchase price.

poses, however, is that Bucci had only a *contractual* obligation to pay the employer contributions."; emphasis in original).[9]

Finally, the Plaintiffs argue a trust existed because the Environmental Indemnity Agreement was "to touch and concern the land and shall run with the land" and this statement showed an intent to create a fiduciary relationship. The Plaintiffs refer to Section 5(b) of the Environmental Indemnity Agreement, which provides "[t]his agreement is deemed to touch and concern the land and shall run with the land and shall inure to the benefit of the Purchaser." The Plaintiffs argue that such a real estate covenant creates a fiduciary trust. While such a covenant may be binding *in rem* and may affect future title holders to the property, the Plaintiffs never explain, and the court is not aware, how such a covenant indicates intent to create a specific trust *res*, for the Plaintiffs' benefit, in connection with the purchase price for the sale of the property. The Plaintiffs fail to offer any other persuasive allegations concerning a cause of action under § 523(a)(4) sufficient to withstand the Defendant's motion to dismiss.

### The Plaintiffs May Amend their Complaint To Plead a § 523(a)(2) Cause of Action

■ Plaintiffs seek to amend their complaint to include a cause of action pursuant to § 523(a)(2). The Defendant argues that the amendment is time barred because this cause of action was not filed within 60 days of the first date set for the meeting of creditors. See Bankruptcy Rule 4007(c) ("A complaint to determine the dischargeability of a debt under § 523(c)[10] shall be filed not later than 60 days after the first date set for the meeting of creditors under § 341(a)".).

The Plaintiffs respond that the amended complaint would relate back to the filing date of the original complaint. Federal Civil Rule of Procedure 15(c)(2), applicable to this adversary proceeding by Bankruptcy Rule 7015, provides that "[a]n amendment of a pleading relates back to the date of the original pleading when ... the claim or defense asserted in the amended pleading arose out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading[.]" The Defendant argues that the Plaintiff's proposed amended complaint does not relate back because it asserts new facts as the basis for the proposed § 523(a)(2) cause of action.[11]

**9.** Similarly, In *Ford Motor Credit Co. v. Marinko (In re Marinko)*, 148 B.R. 846 (Bankr. N.D.Ohio 1992), the Debtor sold floor-plan merchandise out of trust. The court found, under the totality of the circumstances, evidence that an officer of the Debtor knew that sale proceeds were to be held in trust. In *Int'l Fidelity Ins. Co. v. Herndon (In re Herndon)*, 277 B.R. 765, 767 (Bankr.E.D.Ark. 2002), the indemnity agreement had a specific provision providing for a "trust fund." As noted, the Plaintiffs cannot point to any allegations of a trust *res* or intent to create such a trust in their complaint. Instead, the parties had a contractual arrangement as part of a real estate sale contract and the Environmental Indemnity Agreement was simply part of the consideration for the contract. Except for the $11,000 escrow for the third party "contractor", there is nothing alleged which could show the Environmental Indemnity Agreement, related documents or other actions of the Debtor created a trust for the purchase price.

**10.** 11 U.S.C. § 523(c) references 11 U.S.C. § 523(a)(2).

**11.** To the extent the Debtor is arguing the Plaintiffs cannot amend simply because they are asserting a new legal theory, the plain meaning of Federal Rule of Procedure 15(c), and the binding decision in *Miller v. Amer. Heavy Lift Shipping*, 231 F.3d 242 (6th Cir. 2000), interpreting Rule 15(c), allows such amendments. Instead, the pertinent question is whether the legal theory now being presented is grounded in new, operative facts.

■ The Sixth Circuit explained the parameters of the relation back rule in *Miller v. Amer. Heavy Lift Shipping,* 231 F.3d 242 (6th Cir.2000). The court noted that "the thrust of Rule 15 is to reinforce the principle that cases should be tried on their merits rather than on the technicalities of pleadings." *Id.* at 248 (citations and internal quotation marks omitted). However, an amended pleading does not "relate back" where it asserts new "operative facts." *Id.* at 249.

As an example, the court cited a decision where a new cause of action for a lower back injury from jumping from a fence does not relate back when the original complaint was for a neck injury sustained while lifting a heavy object. *Id.* at 249, *citing Koon v. Lakeshore Contractors,* 128 F.R.D. 650, 653 (W.D.Mich.1988). Furthermore, the Sixth Circuit explicitly rejected any mechanical tests, such as requiring the same evidence that could support the original claim could also support the amended claim or determining whether the new claim changes the "when where, what and how" of the injury alleged, finding such tests as incompatible with the liberal approach to Rule 15(c). *Id.* at 249, n. 6, *citing* 6A Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice and Procedure* § 1498, at 102–03 (1990 and Supp.2000). Instead, in allowing the plaintiff to amend his complaint, the court noted that he "alleged the very same general set of facts in the amended complaints as he did in the original ones[.]" *Id.* at 249.

This court finds the general, operative facts in the complaint and the proposed amended complaint arose from the same conduct and transaction—the sale of the property and the related sale documents, including the Environmental Indemnity Agreement and involves the same general set of facts known to, or anticipated by, all the parties involved in the transaction. It is true that the complaint asserts some facts not contained in the initial complaint, including the NFA letter and other specific environmental tests related to the property, but these are permissible added events, and, as alleged, where specifically known to, but withheld from the Plaintiff by, the Defendant who now argues he should not be called to answer for these issues. The essence of the factual predicate remains the same—the Plaintiffs allege they were deceived concerning environmental issues with the property and the remediation of these issues, and, as a result, have suffered damages. The underlying regulatory agency, BUSTR is the focus of both the complaint and the proposed amended complaint. It is these facts which form the operative nucleus of both the complaint and proposed amended complaint.

The Sixth Circuit recently amplified its position in connection with the criteria for determining relation back issues pursuant to Rule 15(c)(2):

Rule 15(c)(2) is "based on the notion that once litigation involving particular conduct or a given transaction or occurrence has been instituted, the parties are not entitled to the protection of the statute of limitations against the later assertion by amendment of defenses or claims that arise out of the same conduct, transaction, or occurrence." *Brown v. Shaner,* 172 F.3d 927, 932 (6th Cir.1999). Rule 15(c)(2) does not define the scope of the terms "conduct, transaction, or occurrence." When applying this standard to the facts of a given case, the Court gives content to those terms not by generic or ideal notions of what constitutes a "conduct, transaction, or occurrence," but instead by asking whether the party asserting the statute of limitations defense had been placed on notice that he could be called to

answer for the allegations in the amended pleading. *See Santamarina v. Sears, Roebuck & Co.*, 466 F.3d 570, 573 (7th Cir.2006) ("The criterion of relation back is whether the original complaint gave the defendant enough notice of the nature and scope of the plaintiff's claim that he shouldn't have been surprised by the amplification of the allegations of the original complaint in the amended one."). The Rule also must be interpreted in light of the "fundamental tenor of the Rules," which "is one of liberality rather than technicality." *Miller*, 231 F.3d at 248.

*U.S. ex rel. Bledsoe v. Community Health Sys., Inc.*, 501 F.3d 493, 2007 WL 2492439, at *17 (6th Cir. Sept. 6, 2007).

The Defendant argues, citing to an older bankruptcy court decision, that the complaint is based factually on the Environmental Indemnity Agreement and the BUSTR regulations only and the proposed amended complaint requires the consideration of new evidence, presumably, such as the TCA test, and, therefore, the proposed amended complaint should not relate back. See *Citizens Fidelity Bank and Trust Co. v. Wahl (In re Wahl)*, 28 B.R. 688, 691 (Bankr.W.D.Ky.1983) (holding the causes of action in the amended complaint did not relate back because they would "require the introduction of additional evidence...."). However, as noted earlier, the Sixth Circuit explicitly rejected such a mechanical test. *Miller* at 249, n. 6, *citing* 6A Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, § 1498, at 102–03. See also *Limor v. Buerger (In re Del–Mart Corp.)*, 322 B.R. 781, 793–97 (Bankr. M.D.Tenn.2005) (court reviewing and applying the liberal approach to Rule 15(c) advocated by the Sixth Circuit's decision in *Miller*).

In the circumstances of this adversary proceeding, the Defendant, who had prior knowledge of the environmental issues, and who is alleged to have withheld information in his possession which would have more fully explained the extent of the environmental issues, "had been placed on notice that he could be called to answer for the allegations in the amended pleading." *Bledsoe* at 516, 2007 WL 2492439, *17.

The Sixth Circuit also noted that "[a]lthough the focus of our inquiry into whether an amendment relates back pursuant to Rule 15(c)(2) is whether it arises from the conduct, transaction, or occurrence", other factors such as "[u]ndue delay in filing, lack of notice to the opposing party, bad faith by the moving party, repeated failure to cure deficiencies by previous amendments, undue prejudice to the opposing party, and futility of amendment" are also relevant. *Miller* at 250 (citation omitted). The *Miller* decision further found that, of those factors, "notice and substantial prejudice to the opposing party are critical ... in determining whether an amendment should be granted." *Id., quoting Hageman v. Signal L.P. Gas, Inc.*, 486 F.2d 479, 484 (6th Cir.1973).

In this instance, the Defendant has been on notice of the potential dischargeability issues concerning the sale of the property, there is no substantial prejudice at this early stage in the adversary proceeding, the proposed amendment is being filed in the early stage of this adversary proceeding, no bad faith is alleged by the Defendant in regard to the amendment and the Plaintiffs have not amended their complaint previously. Finally, the court cannot conclude, at this stage, that such an amendment, alleging fraud under § 523(a)(2), would be futile.[12]

---

**12.** The court, of course, expresses no opinion on the ultimate merits of the proposed

§ 523(a)(2) cause of action.

### Conclusion

The Defendant's *Motion to Dismiss* (Doc. 10) the Plaintiffs' cause of action pursuant to 11 U.S.C. § 523(a)(4) is **GRANTED.** The Plaintiffs' *Motion for Leave to File Amended Complaint* (Doc. 12) is **GRANTED.** The Plaintiffs shall file, not later than September 28, 2007, their proposed amended complaint (Doc. 12—Exh. A), limited to the § 523(a)(2) cause of action.

**SO ORDERED.**